UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
JOHN T. BROPHY,

                                Plaintiff,

               - against -

ELAINE L. CHAO, SECRETARY DEPARTMENT OF
TRANSPORTATION and JOHN AND JANE
DOES 1-10,
                          Defendants.
-------------------------------------------------------------------------x

**OPINION AND ORDER**

17-CV-9527 (CS)

Appearances:

John T. Brophy
Rye, New York
*Pro Se Plaintiff*

Jennifer C. Simon
Assistant United States Attorney
Southern District of New York
New York, New York
*Counsel for Defendant Elaine L. Chao*

Seibel, J.

      Before the Court is the motion to dismiss of Defendant Elaine Chao. (Doc. 20.)

## I. BACKGROUND

      I accept as true the facts, but not the conclusions or legal arguments, set forth in the Amended Complaint. (Doc. 14 ("AC").)

### A. Facts

      Plaintiff is a white male and was seventy-three years old when the actions giving rise to this action occurred. (*Id.* ¶ 13.)

Plaintiff began working for the Federal Aviation Administration ("FAA") in February 2006 as a Labor and Employee Relations ("LER") Specialist. (*Id.*) On or shortly before July 15, 2013, the FAA announced a vacancy for the position of Branch Manager for LER in the Eastern Region Office, and solicited applications during the ten-day period between July 15, 2013, and July 25, 2013. (*Id.* ¶ 29.) Applicants were required to complete an application, and to qualify for the position applicants had to, among other things, "demonstrate in [their] application that [they] possess at least one year of specialized experience equivalent to FV-1 or FG/GS-13 in the Federal Service." (*Id.* app. 5 at 1-2.) Applicants were also required to participate in an interview, which was conducted by a panel consisting of Scott Malon (Eastern LER Service Area Management Project Manager), Irma Field (Headquarters LER Specialist), and Tesha McMinn (Service Area Manager). (*See id.* ¶¶ 16, 88.) Malon developed ten interview questions "that addressed the management, leadership and technical requirements of the position," and he created a points-based ranking system to score the applicants on their answers. (*Id.* ¶¶ 89, 91.)

Plaintiff states that there were six applicants qualified for the position: (1) Plaintiff; (2) Juan Restrepo, a thirty-nine-year-old Hispanic male; (3) Sandra Peets, a forty-eight-year-old African-American female; (4) Víctor Patino, a forty-eight-year-old Hispanic male; (5) Judy Torcivia, a sixty-five-year-old white female; and (6) Peter Grossi, a sixty-four-year-old white male. (*Id.* ¶ 33.)

After the interviews were completed, the job was offered to Restrepo. (*See id.* ¶ 16.) At the time of the application period, Restrepo had five years of experience as an LER Specialist and no other federal employment experience. (*Id.* ¶ 43.) Plaintiff had thirty years of federal employment experience, seven of which were specialized experience as an LER Specialist in the Eastern Region, and Plaintiff had acted as Restrepo's mentor when Restrepo first began working

as an LER specialist. (*Id.* ¶¶ 41, 44.) Additionally, Plaintiff possessed a J.D. from Pace Law School with a major in labor law, thirty graduate credits in public administration from American University, and a B.A. from Pace University. (*Id.* ¶ 45.) Plaintiff, however, scored "at the bottom in a tie with [fifteen] points" on Malon's test, while Restrepo scored the highest, with twenty-two points. (*Id.* ¶¶ 78, 109.)

Restrepo declined the position, and it was next offered to and ultimately accepted by Peets. (*Id.* ¶ 16.) At the time of the application period, Peets had a total of five years' experience with the FAA, including two years and four months' experience as an LER Specialist. (*Id.* ¶¶ 42-43.) Peets was a high school graduate with "some college." (*Id.* ¶ 46.) Peets, however, scored the second highest on Malon's interview test with twenty points. (*Id.* ¶ 78; Doc. 19 at 4.)

Plaintiff alleges that the Defendant and other FAA employees made their promotion decisions based "solely on the interview results," (AC ¶ 111), and that the interview panel did not, as required by regulation, "assess the qualified applicants against the criteria in the job announcement, in the applicants' on-line applications and in the applican[ts'] resumes," (*id.* ¶ 114 (internal quotation marks omitted)). Further, Plaintiff alleges that attestations McMinn made during administrative proceedings indicated that she had not read his application materials prior to the interview. (*See id.* ¶¶ 95-96.)

Plaintiff alleges that relying exclusively on the interviews allowed the panel to discriminate against him on the bases of race, sex, and age, (*id.* ¶ 115), but he does not explain how reliance on the interviews allowed the panel to discriminate nor does he allege that the interview process had a disparate impact on white people, men, or older individuals. Plaintiff's only specific allegations of race, sex, or age discrimination are the following: First, Plaintiff

alleges that McMinn's attestation that "[i]t appears to me that the Complainant is White," (*id.* ¶ 97), "is indicative of her discriminatory animus towards him," (*id.* ¶ 98). Second, Plaintiff alleges (only in his motion papers) that "Malon harbors a preference for female, minority" candidates based upon information and belief that in 2016 the four branch managers who reported to Malon were African-American females. (Doc. 23 ("P's Opp.") at 11; *see* AC ¶ 82.)

On November 1, 2013, and March 20, 2014, Plaintiff filed complaints alleging that Defendant and other FAA employees discriminated against him "by failing and refusing to promote Plaintiff to the vacant Branch Manager position." (AC ¶ 130.) Plaintiff did not identify to whom or where he filed his first complaint, but on January 23, 2014, FAA Civil Rights Investigator Michael Denisi interviewed Malon regarding it, (*id.* ¶ 131), so Plaintiff likely filed his November 1, 2013 complaint with the FAA. Plaintiff does not state what, if anything, came of this complaint. The March 20, 2014 complaint was filed with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* app. 1 at 1.)

On March 24, 2014, four days after filing his second complaint, Plaintiff received a Letter of Counseling from Peets. (*Id.* ¶¶ 147, 150.) Plaintiff claims that the Letter of Counseling constituted an adverse employment action, but he does not state what was in the letter beyond the fact that it counseled Plaintiff to "avoid giving the appearance of engaging in prohibited personnel practices." (*Id.*) Plaintiff alleges that the letter "could have been used as a predicate for future enhanced penalties, may prejudice future employment or advancement opportunities and is an unwarranted stigma on an otherwise outstanding career history." (*Id.* ¶ 155.) Plaintiff also only vaguely refers to the conduct underlying the Letter of Counseling, stating that the letter was sent in response to "human resources advice" that Plaintiff gave to Greg Kirkland, Assistant Manager in Flight Standards, seventeen months earlier. (*Id.* ¶¶ 148-149; *see id.* ¶ 146.)

4

Plaintiff alleges that Defendant took a second adverse employment action against him when on April 27, 2014, Peets opened an Accountability Board ("AB") investigation into an allegedly rude gesture Plaintiff made toward Restrepo. (*Id.* ¶ 159.) Plaintiff admits he gestured to Restrepo "to stop engaging in mental masturbation by postulating on a matter that he knew not to be true." (*Id.* ¶ 162.) Peets admonished Plaintiff and suggested that Plaintiff apologize to Restrepo, which Plaintiff did. (*Id.* ¶¶ 163-164.) Plaintiff was unaware that the incident had been reported to the AB until June 16, 2014, when he received a call from Joyce Smothers, a human resources administrator, who questioned Plaintiff about the incident. (*Id.* ¶¶ 169-170.) After hearing no updates on the investigation, Plaintiff contacted the AB, and was informed that the investigation had been closed without any further action recommended. (*Id.* ¶ 171.)

Plaintiff alleges the AB lacked jurisdiction to conduct the investigation because its jurisdiction is "limited to misconduct . . . based on race, color, religion, gender, sexual orientation, national origin, age, or disability." (*Id.* ¶ 177 (internal quotation marks and emphasis omitted).) Plaintiff alleges his conduct toward Restrepo does not fall into any of those categories. (*Id.* ¶ 178.)

In June 2017, Plaintiff retired from the FAA as an LER Specialist, at the same pay band in which he had been since 2006. (*Id.* ¶ 13.)

**B.** **Procedural History**

1. Administrative Remedies

Plaintiff filed his EEOC complaint on March 20, 2014. (*Id.* app 1 at 1.) On July 28, 2014, Plaintiff filed a Hearing Request form with the EEOC. (*Id.* ¶ 8.) On September 23, 2015, EEOC Administrative Judge ("AJ") Erin Stilp granted the FAA's Motion for Decision Without a Hearing and Motion for Summary Judgment, which the FAA adopted on September 25, 2015.

(*Id.* ¶ 9.) On November 27, 2015, Plaintiff filed an appeal with the EEOC Office of Federal Operations. (*Id.* ¶ 10.) The Office of Federal Operations affirmed AJ Stilp's decision and issued a Right to Sue Letter dated August 31, 2017. (*Id.* ¶ 11; *id.* app. 1.)

### 2. Instant Action

Plaintiff filed the original complaint in this action on December 5, 2017. (Doc. 1.) On March 19, 2018, Defendants filed a pre-motion letter stating their intention to file a motion to dismiss. (Doc. 8.) The Court held a pre-motion conference on May 9, 2018, at which the Court granted Plaintiff leave to file an amended complaint. (Minute Entry dated May 9, 2018.)

Plaintiff filed his AC on June 8, 2018, bringing the following claims: (1) race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*; (2) sex discrimination under Title VII; (3) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*; and (4-5) two counts of retaliation under Title VII and the ADEA. (AC ¶¶ 117-191.) On July 6, 2018, Defendant filed her motion to dismiss, (Doc. 20), and a memorandum of law in support of her motion, (D's Mem.). On August 6, 2018, Plaintiff filed his opposition to Defendant's motion, (P's Opp.), and on August 27, 2018, Defendant filed her reply, (Doc. 24 ("D's Rep.")).[1]

## II. LEGAL STANDARDS

### A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[1] Plaintiff's opposition brief does not comply with my individual practices. All motion papers must be "double-spaced" and "are limited to twenty-five (25) pages." Rule 2(B)(i), Individual Practices of Judge Cathy Seibel. First, Plaintiff did not comply because his opposition was single-spaced. Second, had Plaintiff's brief been properly double-spaced, it would have exceeded twenty-five pages. In future filings, Plaintiff must comply with my Individual Practices or risk his filings being stricken.

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).[2]

---

[2] Plaintiff is representing himself *pro se* in this action. Ordinarily complaints made by *pro se* plaintiffs are to be examined with "special solicitude," interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (emphasis and internal quotation marks omitted), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted). But here Plaintiff is a lawyer, and thus "the liberal construction courts generally give the pleadings of a *pro se* litigant does not apply." *Levy v.*

7

B. **Documents the Court May Consider**

When deciding a motion to dismiss, a court is entitled to consider:

(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted). Here, Plaintiff attached seven exhibits as appendices to the AC, (Docs. 14, 19), all of which I may consider on this motion.

III. **DISCUSSION**

A. **Failure to Promote**

To plead a plausible failure-to-promote claim, a plaintiff must allege:

"(1) that he is a member of a protected class; (2) that he applied for a promotion to a position for which he was qualified; (3) that he was rejected for the position; and (4) after this rejection, the position was filled by someone outside the protected class who was similarly or less well qualified than the plaintiff . . . ."

*Wheeler v. Bank of N.Y. Mellon*, No. 16-CV-1176, 2018 WL 3730862, at *5 (N.D.N.Y. Aug. 6, 2018) (alterations omitted) (quoting *Gordon v. City of N.Y.*, No. 14-CV-6115, 2015 WL 3473500, at *7 (S.D.N.Y. June 2, 2015)); *see Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015) ("[A]bsent direct evidence of discrimination, what must be plausibly supported by the facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent."). "[W]hile a discrimination complaint

---

*Welsh*, No. 12-CV-2056, 2013 WL 1149152, at *3 (E.D.N.Y. Mar. 19, 2013) (collecting cases). (The Court will mail a copy of all unpublished decisions to Plaintiff.)

need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to 'nudge its claims across the line from conceivable to plausible' to proceed." *EEOC v. Port. Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (citation and alteration omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)).[3]

1. Race and Age Discrimination

Plaintiff has adequately pleaded each of the factors above with regard to his claims of race and age discrimination. He is white and well over forty years old, (AC ¶ 13), meaning he is in protected classes based on his race and age. *See* 42 U.S.C. § 2000e-2; 29 U.S.C. § 631. He alleged he applied for the position, was qualified, and was rejected. (*Id.* ¶¶ 41, 44-45.) The position was offered first to Restrepo, a thirty-nine-year-old Hispanic male, and then after Restrepo declined the promotion, to Sandra Peets, a forty-eight-year-old African-American female. (*Id.* ¶¶ 16, 33.) Plaintiff alleges he was more qualified than both – allegations he supports with specific facts regarding his, Restrepo's, and Peets's employment history and educational background. (*Id.* ¶¶ 43, 46.)[4] Plaintiff's allegations that he "was rejected in favor of . . . younger and less-qualified" individuals outside of Plaintiff's protected class, are "sufficient to give rise to an inference of discrimination." *Chacko v. Worldwide Flight Servs.*, No, 08-CV-2363, 2010 WL 424025, at *4 (E.D.N.Y. Feb. 3, 2010); *see Wheeler*, 2018 WL 3730862, at *6 (denying motion to dismiss where plaintiff alleged she had more professional

---

[3] To establish a *prima facie* case for failure to promote, "a plaintiff must show that he was a member of a protected class, that he was qualified for the job for which he applied, that he was denied the job and that the denial occurred under circumstances giving rise to an inference of impermissible discrimination." *Witkowich v. Gonzales,* 541 F. Supp. 2d 572, 578 (S.D.N.Y. 2008) (quoting *Howley v. Town of Stratford,* 217 F.3d 141, 150 (2d Cir. 2000)).

[4] It may well be that Plaintiff's qualifications were not so superior to the comparators' as to survive summary judgment, *see, e.g.*, *Pathare v. Klein*, 347 F. App'x 646, 648 (2d Cir. 2009) (summary order), but at this stage I only assess plausibility,

9

experience than selectee who was outside of plaintiff's protected class); *Stewart v. City of N.Y.*, No. 11-CV-6935, 2012 WL 2849779, at *9 (S.D.N.Y. July 10, 2012) (African-American plaintiff adequately alleged facts allowing inference of discrimination because he alleged, among other things, that white detectives with less experience and lesser credentials were promoted ahead of him and other black co-workers); *Gordon*, 2015 WL 3473500, at *7 (inference of discrimination sufficiently pleaded where similarly qualified non-protected-class members received promotion for which plaintiff was passed over); *see also Antunes v. Putnam/N. Westchester Bd. of Co-op. Educ. Servs.*, No. 09-CV-3063, 2011 WL 1990872, at *6 (S.D.N.Y. May 19, 2011) ("In determining whether the evidence adduced gives rise to an inference of age discrimination, it is generally sufficient to demonstrate that the plaintiff was passed over for a candidate substantially younger than the plaintiff.") (internal quotation marks omitted), *aff'd sub nom. Antunes v. Putnam N. Westchester Bd. of Co-op Educ. Servs.*, 482 F. App'x 661 (2d Cir. 2012) (summary order); *cf. Baez v. New York*, 56 F. Supp. 3d 456, 467-68 (S.D.N.Y. 2014) (finding complaint deficient for failing to allege "that Plaintiff was passed over for promotions in favor of individuals outside of her protected class").

Because Plaintiff alleged less-qualified individuals who were non-white and were substantially younger than Plaintiff were promoted over him, he has sufficiently pleaded a Title VII claim based on race discrimination and an ADEA claim. In fact, Plaintiff has gone beyond the minimal pleading burden by "alleg[ing] facts establishing each element of a *prima facie* case of discrimination." *Port. Auth. of N.Y. & N.J.*, 768 F.3d at 254.[5]

---

[5] Plaintiff's argument regarding McMinn, however, is ludicrous. She was interviewed following Plaintiff's EEOC complaint and asked if she knew Plaintiff's race at the time of the interview. (Doc. 19-2 Ex. F4 at 4.) She said, "It appears to me that the [Plaintiff] is White." (*Id.*) No rational inference of discrimination arises from that observation. *Jalal v. Columbia Univ.*, 4 F.

10

In addition to pleading a *prima facie* case, however, Plaintiff has also pleaded a legitimate, nondiscriminatory reason for Defendant's failure to promote him: Plaintiff was tied for the lowest score of any applicant on Malon's interview test, while Restrepo and Peets scored the highest and second highest of all of the applicants. (AC ¶¶ 78, 109.) Typically, under the *McDonnell Douglas* burden-shifting framework used in employment discrimination cases, where a defendant provides a nondiscriminatory reason for a failure to promote, the plaintiff must rebut that reason by showing it was a mere pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 806 (1973). The *McDonnell Douglas* burden-shifting paradigm, however, is premature at the motion-to-dismiss stage, *Blige v. City Univ. of N.Y.*, No. 15-CV-8873, 2017 WL 498580, at *6 (S.D.N.Y. Jan. 19, 2017), and there is no controlling Second Circuit precedent that requires plaintiffs to plead pretext even where the plaintiff's complaint itself offers a legitimate, nondiscriminatory reason for the failure to promote on defendant's behalf. *Compare Javed v. Medgar Evers Coll. of City Univ. of N.Y.*, 724 F. App'x 73, 74 (2d Cir. 2018) (summary order), *as amended* (June 12, 2018) ("Contrary to the district court's suggestion, [plaintiff] does not need to allege facts tending to show that [the defendants' nondiscriminatory justification for the employment action] was pretextual to survive a motion to dismiss.") *with Martinez v. City of N.Y.*, 338 F. App'x 71, 73 (2d Cir. 2009) (summary order) (affirming decision to grant defendants' motion to dismiss where "[t]he complaint acknowledged the Defendants' non-discriminatory reason for the adverse action and failed to allege facts which, if proved, would establish that this reason for the penalty was pretextual, and that the action was, in fact, taken due to a discriminatory animus."). Thus, even though Plaintiff has pleaded a nondiscriminatory reason for Defendant's failure to promote him and has not pleaded that the

---

Supp. 2d 224, 236 (S.D.N.Y. 1998) ("Statements that merely acknowledge a person's membership in a Title VII-protected class . . . fail to demonstrate bias.").

nondiscriminatory reason was pretextual, he is not required to allege pretext at this stage. *Wolf v. Time Warner, Inc.*, No. 09-CV-6549, 2011 WL 856264, at *9 (S.D.N.Y. Mar. 3, 2011) ("[T]he facts alleged in the Complaint support equally or perhaps more plausibl[y], non-discriminatory bases for Plaintiff's termination. Nevertheless, at this stage of the proceedings all facts in the Complaint are presumed to be true and, taken as such, support at least a plausible inference of discrimination such that Plaintiff's claims will survive another day.").

"That is not to say that Plaintiff[']s claims are necessarily strong ones or that Defendant will not prevail at the summary judgment stage following the commencement of discovery." *Id*. In fact, it is likely that Defendant will prevail on a summary judgment motion with regard to Plaintiff's racial and age discrimination claims. Plaintiff has already done the work for Defendant by pleading a legitimate nondiscriminatory reason for her failure to promote him, and Plaintiff will now carry the burden of having to show that reason was pretextual, despite the AC offering no hint of any pretext. At this stage, however, Plaintiff has met his pleading burden, and his claims of race and age discrimination survive.

2. <u>Sex Discrimination</u>

Unlike Plaintiff's claims of race and age discrimination, Plaintiff has failed to sufficiently plead an inference of discrimination based on sex. First, the job was initially offered to Restrepo, who is also a male and thus in Plaintiff's protected class. While not dispositive, the fact that the job was offered to another member of Plaintiff's protected class, "weighs against a finding of discrimination." *Stouter v. Smithtown Cent. Sch. Dist.*, 687 F. Supp. 2d 224, 233 (E.D.N.Y. 2010). Second, Malon, the individual Plaintiff alleges made the promotion decision, is male, and I may reasonably "draw an inference against discrimination where the person taking the adverse action is in the same protected class as the effected employee." *Brooks v. Blank*, No.

10-CV-8124, 2014 WL 1495774, at *12 (S.D.N.Y. Mar. 31, 2014). Plaintiff offered no additional allegations upon which I can infer his sex was a factor in the decision not to promote him, and as such, his claim for sex discrimination pursuant to Title VII is dismissed.

### B. Retaliation Claims

Plaintiff also alleges that Defendant retaliated against him in violation of Title VII and the ADEA. (AC ¶¶ 128-191.) Specifically, Plaintiff alleges that the March 24, 2014 Letter of Counseling he received and the AB investigation that Peets initiated constituted acts of retaliation. (*Id.* ¶¶ 147, 159.)

To establish a *prima facie* case of retaliation, an employee must show that "(1) [he] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse,* 670 F.3d 127, 157 (2d Cir. 2012).

Defendant argues that Plaintiff has failed to adequately plead the third factor: a materially adverse employment action. (Ds' Mem. at 14-16; Ds' Rep. at 5-6.) I agree. An adverse action for retaliation purposes is one which is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (Title VII); *see Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006) (applying *Burlington* standard to ADEA). Plaintiff alleges that the Letter of Counseling "could have been used as a predicate for future enhanced penalties" or "may prejudice future employment or advancement opportunities." (AC ¶ 155.) But the fear of future penalties that do not come to fruition is insufficient to establish an adverse employment action for purposes of a retaliation claim. *Nunez v. N.Y. State Dep't of Corr.*, No. 14-CV-6647, 2017 WL 3475494, at *4 (S.D.N.Y. Aug. 11,

2017) ("[I]t is well established that fear of future possible retaliation is insufficient to establish a materially adverse employment action.") (internal quotation marks omitted). Plaintiff also alleges that the Letter of Counseling resulted in an "unwarranted stigma on an otherwise outstanding career history," (AC ¶ 155), but counseling letters alone are not considered materially adverse employment actions, *see Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) ("[I]n the context of the issuance of a 'counseling memo,' . . . criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action.") (internal quotation marks omitted).

Plaintiff similarly did not suffer any harm from the AB investigation. As Plaintiff himself stated, "the investigation had been closed without any further action recommended." (AC ¶ 171.) "A government investigation may constitute an adverse employment action if it results in 'a hostile work environment, constructive discharge, or other employment consequences of a negative nature, or if conducted in such an egregious manner as to dissuade a reasonable worker from making or supporting a charge of discrimination,'" but an investigation consisting of brief inquiries and resulting in no discipline does not meet this standard. *Tillery v. N.Y. State Office of Alcoholism & Substance Abuse Servs.*, 739 F. App'x 23, 27 (2d Cir. 2018) (summary order) (quoting *Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 147 (2d Cir. 2014)); *see Tepperwien*, 663 F.3d at 569-70. Plaintiff alleged that he was interviewed only once regarding the incident, and he did not allege that he suffered any harm as a result of the investigation.

Because neither the counseling letter nor the AB investigation amount, individually or collectively, to an adverse action, the retaliation claims are dismissed.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's claims of race discrimination under Title VII and age discrimination under the ADEA survive, but the remainder of Plaintiff's claims are dismissed. The Clerk of the Court is respectfully directed to terminate the pending motion, (Doc. 20), and the parties are ordered to appear for a status conference on March 7, 2019, at 10:00 a.m.

**SO ORDERED.**

Dated: February 7, 2019
      White Plains, New York

                                          _____
                                              CATHY SEIBEL, U.S.D.J.